## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

LAVAR ROY,

                                                        Plaintiff,

          v.                                                        9:19-CV-585
                                                                    (LEK/ATB)

NURSE ALICIA, et al.,

                                                        Defendants.

LAVAR ROY, Plaintiff, pro se
KONSTANDINOS D. LERIS, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this civil rights complaint,

plaintiff asserts various allegations of constitutional violations that occurred while he

was confined at the Central New York Psychiatric Center ("CNYPC") in the custody of

the New York State Department of Corrections and Community Supervision.

("DOCCS").  By Decision and Order dated June 21, 2019, Judge Kahn dismissed

several defendants and causes of action pursuant to 28 U.S.C. §§ 1915, 1915A.  (Dkt.

No. 10).  Liberally construed, the surviving claims in plaintiff's complaint include

Fourteenth Amendment due process claims against defendants Sullivan, Beale, Liu, and

Laperla.  (*Id.*).

Presently before the court is the defendants' motion for summary judgment

pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 31).  Plaintiff has failed to respond to the

defendants' motion, despite being given an extension of time to do so. (Dkt. No. 35).

For the reasons set forth below, the court recommends granting defendants' motion for

summary judgment and dismissing the complaint in its entirety.

I.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material

fact and, based on the undisputed facts, the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no

rational finder of fact could find in favor of the non-moving party for a court to grant a

motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219,

1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts

by informing the court of portions of pleadings, depositions, and affidavits which

support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

party satisfies its burden, the nonmoving party must move forward with specific facts

showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.

In that context, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In determining whether there is a

genuine issue of material fact, a court must resolve all ambiguities, and draw all

inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[1]   The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise.  Local Rule 56.1(b).  The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

## II.    Factual Contentions

Plaintiff's surviving due process claim surrounds the events which took place the morning of January 11, 2019 at CNYPC.  (Compl. at 6).  According to the plaintiff's testimony, he was sitting in the day room, conversing with another patient about medicine.  (Plaintiff's Deposition ("Pl.'s Dep.") at 54-56) (Dkt. No. 31-1).  Plaintiff denies that he was being loud in the day room that morning – he suffered from hearing loss, and as a result "talk[ed] loud." (*Id.* at 56).  Nevertheless, plaintiff testified that he was approached by CNYPC staff and taken to the side room, where he was told to wait.

---

[1]Previously Local Rule 7.1(a)(3).

(*Id.* at 63-64).  There, over his objections, plaintiff was placed in a five-point restraint

and injected on each side of his buttocks by defendant nurse Alicia Laperla.  (*Id.* at 66,

69-70). [2]  (*Id.* at 73).  Nurse Laperla told plaintiff that defendant Dr. Jean Liu ordered

the injections.  (*Id.* at 67).  Plaintiff remained in the five-point restraint for

approximately ten minutes, then was taken out of the side room.  (*Id.* at 73-74).  In

addition to a mark on his buttock, the injections caused plaintiff to suffer side effects

including a slowed heart rate and hand tremors.  (*Id.* at 74-75).

Plaintiff testified that defendant Dr. Ann Marie Sullivan was not in the side room

that morning, but was the "monitoring doctor" and  "responsible for overseeing the

injections." (*Id.* at 68-69, 80, 87).  Defendant Dr. Mark Beale was also not present in

the side room, and plaintiff testified that he "never saw him" that day.  (*Id.* at 69).

Plaintiff testified that Dr. Beale was responsible for ordering the medication with which

he was injected.  (*Id.* at 92-93).

In support of their motion for summary judgment, defendants have submitted

various party declarations, medical records, and a DVD containing video footage of the

side room on the morning of January 11, 2019.  According to the defendants'

submissions, plaintiff was admitted to CNYPC on January 7th after exhibiting signs of

psychological decompensation while incarcerated at Five Points Correctional Facility.

(Declaration of Dr. Mark Beale ("Beale Dec.") at ¶ 5) (Dkt. No. 31-2).  Plaintiff's

diagnoses upon admission were Schizophrenia and Antisocial Personality Disorder.

---

[2]At his deposition, plaintiff could not independently recall the name of the medications he
was injected with.  Later in the deposition, plaintiff referred to an exhibit in his complaint and
testified that he was injected with three medications - Haldol, Benadryl, and Ativan.  (Pl.'s Dep.
at 78).

(*Id.* at ¶ 7).

On the morning of January 11, 2019, plaintiff was in the ward 201 day room at CNYPC when staff observed him to become agitated. (Declaration of Alicia Laperla ("Laperla Dec.") at ¶ 9) (Dkt. No. 31-3). Nurse Laperla approached plaintiff to assess the situation and to offer him his prescribed medication.[3] (*Id.* at ¶ 10). Plaintiff refused his medication and continued to be argumentative. (*Id.*). Nurse Laperla observed that plaintiff's speech was increasing in volume. (*Id.*). As a result of plaintiff's conduct, he was moved by CNYPC facility staff to the "side isolation room to mitigate disturbance of other patients' programming." (*Id.*). Dr. Jean Liu, the psychiatrist assigned to plaintiff's ward that day, was also called to the scene. (*Id.*; Declaration of Dr. Jean Liu ("Liu Dec.") at ¶¶ 7, 10 (Dkt. No. 31-4)).

Dr. Liu arrived to the side room, and plaintiff became increasingly loud and argumentative. (Laperla Dec. at ¶ 11). Plaintiff was observed to place his hands in the door jamb, push against the door, and accuse staff members of attempting to injure him. (Laperla Dec. at ¶ 11; Liu Dec. at ¶ 12, Ex. A at 2, 4). Dr. Liu attempted to speak with plaintiff and utilized de-escalation techniques, however plaintiff remained agitated. (Liu Dec. at ¶13). Dr. Liu then advised plaintiff that he would need to be medicated due to the dangerousness of his actions and the risk of harming himself or others. (*Id.*). Plaintiff refused to take any medication. (*Id.*). Thus, at approximately 8:15 a.m., Dr.

---

[3]It appears that plaintiff had refused his morning medication on January 10, 2019, the day before the events at issue took place. (Beale Dec. Ex. B at 15). There is no indication that CNYPC forced plaintiff to take his medication on January 10th, and the relevant progress note otherwise indicates that plaintiff was "following ward staff directions and adjusting to ward without issue." *Id.*

Liu ordered that Nurse Laperla medicate plaintiff over his objection with an immediate

injection of Zyprexa and Benadryl.[4]  (Laperla Dec. at ¶ 14; Liu Dec. at ¶¶ 13, 16).

Plaintiff was placed in a restraint bed for administration of the medication, and Nurse

Laperla administered the injection into plaintiff's left gluteus.  (Laperla Dec. at ¶ 14,

Liu Dec. at ¶16).  Plaintiff was immediately removed from the restraint bed after the

medication was administered and instructed to remain in the side room to calm.  (*Id.*).

At approximately 9:30 a.m., Dr. Liu and other members of the treatment team

reevaluated plaintiff's behavior in an effort to determine the effectiveness of the

administered medication.  (Laperla Dec. at ¶ 16, Liu Dec. at ¶ 18).  Plaintiff presented

as more argumentative than previously observed, and became threatening toward

CNYPC staff.  (*Id.*).  At 10:00 a.m. Dr. Liu ordered Nurse Laperla to once again

medicate plaintiff over his objections with an injection of Haldol, Ativan, and

Benadryl.[5]  (Laperla Dec. at ¶ 17; Liu Dec. at ¶ 19).  Plaintiff was placed in a restraint

bed for administration of the medication, and the injection was delivered into his left

gluteus by Nurse Laperla.[6]  (*Id.*). After plaintiff was injected, he refused help off the

---

[4]Zyprexa is a mood stabilizer intended to temporarily calm a patient.  Benadryl is an
antihistamine and was prescribed to both calm plaintiff and treat the side effects from the other
medication.  (Liu Dec. at ¶ 17).

[5]Haldol is an antipsychotic medication, prescribed to treat plaintiff's symptoms arising
from his schizophrenia.  Ativan is a sedative utilized to reduce anxiety and calm plaintiff.  (Liu
Dec. at ¶ 21).

[6]The court notes a discrepancy between Nurse Laperla and Dr. Liu's declarations – which
state that the second course of injections were administered into plaintiff's left gluteus – and the
attached CNYPC progress note stating that the second round of medications were administered
into plaintiff's right gluteus.  (*See* Laperla Dec. Ex. A).  The video footage contained in the DVD
exhibit submitted by defendants indicates that the second round of medication was administered
into plaintiff's right gluteus. (Dkt. No. 33 at 2:02:45).

bed, stating that "staff would have to throw him off and beat him up." (Laperla Dec. at

¶17; Liu Dec. at ¶ 19). In order to prevent plaintiff from endangering himself, Dr. Liu

ordered that plaintiff be placed in a five-point restraint at 10:04 a.m. (*Id.*). Plaintiff was

released from the five-point restraint upon calming, at approximately 10:54 a.m.

(Laperla Dec. at ¶ 17). Plaintiff was then returned to his dorm room. (Laperla Dec. at ¶

21).

## III.    Discussion

### A.    Legal Standards

#### 1.    Fourteenth Amendment Due Process

The Fourteenth Amendment provides that a state may not deprive a person of

liberty or property "without due process of law." U.S. Const. amend. XIV. The Due

Process Clause contains both a procedural and substantive component. Procedural due

process claims concern the "adequacy of the procedure provided by [a] governmental

body for the protection of liberty or property rights of an individual." *Sanchez v. Univ.*

*of Connecticut Health Care*, 292 F. Supp. 2d 385, 397 (D. Conn. 2003) (citation

omitted). To successfully state a claim under section 1983 for denial of procedural due

process, a plaintiff must show that he or she 1) possessed an actual liberty or property

interest, and 2) was deprived of that interest without being afforded sufficient process.

*See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004); *see also Tellier v. Fields*, 280

F.3d 69, 79–80 (2d Cir. 2000) (citations omitted).

In addition to its governance over fair process, the Fourteenth Amendment

"cover[s] a substantive sphere as well, barring certain government actions regardless of

the fairness of the procedures used to implement them." *Hurd v. Fredenburgh*, No.

19-3482, ___ F.3d. ___, 2021 WL 96886, at *7 (2d Cir. Jan. 12, 2021) (quoting *Cnty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotation marks and citations

omitted)). "Substantive due process rights safeguard persons against the government's

exercise of power without any reasonable justification in the service of a legitimate

governmental objective." *Id.* (quoting *Southerland v. City of New York*, 680 F.3d 127,

151 (2d Cir. 2012) (internal quotation marks and citation omitted).

### 2.    Personal Involvement

It has long been established that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983[,]"

and supervisory officials may not be held liable merely because they held a position of

authority.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted);

*Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  In *Colon v. Coughlin*, 58 F.3d 865

(2d Cir. 1995), the Second Circuit articulated standards for courts to use when

determining personal involvement or supervisory liability.[7]

---

[7] These factors were:
> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

However after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question.  District courts, including the Northern District of New York[8] noted the possibility that the *Colon* factors were no longer viable, but that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)); *Young v. Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at *10–12 (D. Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer all viable and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, No. 19-3712, __ F.3d __, 2020 WL 7687688, at *4-6 (2d Cir. Dec. 28, 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no

---

[8] *See e.g. Vance v. State of New York*, No. 9:19-CV-748 (BKS/ATB), 2020 WL 7481585, at *3 & n.3 (N.D.N.Y. Nov. 30, 2020) (discussing cases), *report-recommendation adopted*, 2020 WL 7480955 (N.D.N.Y. Dec. 18, 2020).

"special" rule for supervisory liability. *Id.* at \*6.

> Instead, a plaintiff must plead and prove "that each
> Government-official defendant, through the official's own
> individual actions, has violated the Constitution." *Iqbal*, 556
> U.S. at 676 . . . . "The factors necessary to establish a [§ 1983]
> violation will vary with the constitutional provision at issue"
> because the elements of different constitutional violations
> vary. *Id*. The violation must be established against the
> supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676).  Quoting a 10th Circuit case, the *Tangreti* court

stated that "'after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a

d]efendant by showing that as a supervisor he behaved knowingly or with deliberate

indifference that a constitutional violation would occur at the hands of his subordinates,

*unless that is the same state of mind required for the constitutional deprivation he*

*alleges*.'" *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185,

1204 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added, other

citations omitted).  The supervisor must have committed the violation him or herself,

not by the supervision of others who committed the violation. *Id.*  Likewise, the

supervisor must personally display the requisite state of mind, depending on the

violation at issue. *Id.*

### B.   Application

Defendants argue that plaintiff cannot establish a Fourteenth Amendment due

process violation against them because he was properly medicated over his objection

pursuant to New York state law, to the extent he presented as a danger to himself or

others.  (Defendant's Brief ("Def.'s Br.") at 6).  Defendants alternatively argue that the

complaint should be dismissed against Dr. Beale and Dr. Sullivan, because plaintiff has

not established that these defendants were personally involved in any alleged

constitutional violation. (Def.'s Br. at 9-11).

The Supreme Court has unequivocally held that "an inmate has a significant

liberty interest in avoiding the unwanted administration of antipsychotic drugs under

the Due Process Clause of the Fourteenth Amendment." *Coleman v. State Supreme

Court*, 697 F. Supp. 2d 493, 506 (S.D.N.Y. 2010) (quoting *Washington v. Harper,* 494

U.S. 210, 221-22 (1990) (internal quotations omitted)). An individual's right to refuse

medicine is derived from the New York Code of Rules and Regulations, which provides

that " '[p]atients who object to any proposed medical treatment or procedure . . . may

not be treated over their objection except' in narrow circumstances, including 'where

the patient is presently dangerous[9] and the proposed treatment is the most appropriate

reasonably available means of reducing that dangerousness.' " *Xiao Qing Liu v. New

York State Dep't of Health*, No. 16 Civ. 4046, 2017 WL 3393944, at *9 (S.D.N.Y. Aug.

7, 2017) (quoting 14 N.Y.C.R.R. § 527.8(c)(1)). However, due process does not

"require a guarantee that a physician's assessment of the likelihood of serious harm be

correct." *Id.* (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1062 (2d Cir.

1995)). Therefore, "a doctor will not be liable under § 1983 for the treatment decisions

she makes unless such decisions are 'such a substantial departure from accepted

judgment, practice, or standards as to demonstrate that [she] actually did not base the

---

[9]The NYCRR defines "dangerous" to mean "that a patient engages in conduct or is
imminently likely to engage in conduct posing a risk of physical harm to himself or others."14
N.Y.C.R.R. § 527.8(a)(4).

decision on such a judgment.'" *Id.* (quoting *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996)).

In this case, plaintiff has failed to refute the defendants' compelling evidence establishing that he was engaging in conduct posing a risk of physical harm to himself and/or others on the morning of January 11, 2019.  Plaintiff's complaint and deposition testimony, construed in a light most favorable to him, alleges that plaintiff was injected with medication, against his will and without justification, after he complained about the side effects of his prescribed oral medication at CNYPC.  (Compl. at 5-7; Pl.'s Dep. at 23, 54-57, 63-67, 69).  Plaintiff alleges on that morning he was "not threatening anyone [sic] not aggressive [sic] I was loud due to my hearing loss."  (Compl. at 7; *see also* Pl.'s Dep. at 56).

The defendants' evidence suggests otherwise.  The declarations submitted by Nurse Laperla and Dr. Liu, coupled with the contemporaneous progress reports prepared by various CNYPC personnel, describe plaintiff's conduct that morning as upset, agitated, insubordinate to staff directives, and threatening.  (Laperla Dec. at ¶¶ 10-11, ¶ 16, Ex. A; Liu Dec. at ¶¶ 12-13, ¶¶ 18-19, Ex. A at 1, 2, 4, Ex. B at 1).  Of significant relevance is the consistent reference to plaintiff's conduct in the side room immediately before he was involuntarily medicated, i.e. placing his arms, hands, and other body parts in between the door and jamb when staff attempted to close it.  (*See id.*).  A progress report prepared by one CNYPC staff member, Robert Smolinski, states that plaintiff was yelling "close the door crush my hands break my arms."  (Liu Dec. Ex. A at 4).

Defendants have submitted a surveillance video which substantiates the multiple reports from CNYPC staff describing plaintiff's conduct.[10]  (Dkt. No. 33) ("Video"). The time-stamped video is approximately three hours long, and comes from a camera located in the side room.  The video contains audio, however at times it is difficult to make out what is being said.  Nevertheless, it begins depicting plaintiff in the side room arguing with and yelling at CNYPC staff situated somewhere outside of the room. Plaintiff is standing with his foot and hand/arm between the door and jamb of the side room door, in order to prevent CNYPC staff from closing the door without injuring him. (Video at 5:33).  After approximately eighteen minutes of plaintiff exhibiting such conduct, plaintiff is injected with the first round of medication.  (Video at 18:40). Immediately after the first injection is administered, plaintiff independently rises from the bed, follows the treatment team to the door of the side room, and places his hand and foot back in the door, once again preventing CNYPC staff from closing the door. (Video at 19:00).  For over an hour, plaintiff refuses to move out of the doorway, despite repeated requests from CNYPC staff.  (Video at 34:35, 47:20, 56:15, 57:25, 1:35:30, 1:51:00, 1:52:12, 1:54:57, 1:56:30). Plaintiff can also be heard accusing CNYPC staff of shutting the door on his hand, despite his refusal to move.  (Video at

---

[10]The court may rely on the video of the relevant events in concluding that no reasonable fact finder could credit the plaintiff's inconsistent claims about the incident. *See, e.g., Kalfus v. New York and Presbyterian Hosp.*, 476 F. App'x 877, 880 (2d Cir. 2012) (the video demonstrated that plaintiff resisted arrest by refusing to stand up or be handcuffed, and that the patrolmen used only reasonable force to overcome his resistance; no reasonable fact finder could conclude that defendants applied excessive force); *Green v. Morse*, No. 00-CV-6533, 2009 WL 1401642, at *27 (W.D.N.Y. May 18, 2009) (this court may rely on the video evidence clearly showing that some use of force was necessary to grant summary judgment and dismiss plaintiff's excessive force claim) (citations omitted).

1:52:30, 1:55:25).  Plaintiff is eventually injected with the second round of medication. (Video at 2:02:45).

As for the propriety of the medical treatment itself, Dr. Liu affirms that she made the decision to prescribe the subject medications to be administered to plaintiff over his objections because he presented as a danger to himself and the facility.  (Liu Dec. at ¶ 5).  Specifically, Dr. Liu asserts that she initially attempted to utilize de-escalation techniques to calm plaintiff, "however plaintiff remained agitated and continued to attempt to place his hands in the door jamb when staff members attempted to close the door." (*Id.* at ¶ 13).  Dr. Liu also asserts that "her professional judgment indicated that plaintiff's actions of placing his hands in a doorway in an attempt to have staff injure him caused a significant danger to himself, and his argumentative behavior, coupled with his agitation, presented a significant danger to facility staff members.  (*Id.* at ¶ 21). She maintains that "the medications provided to plaintiff were short acting injections and the dosages administered to plaintiff were safe and appropriate in an emergency situation."  (*Id.* at 20).

Accordingly, defendants have met their burden of showing that no genuine issue of material facts exists as to whether Dr. Liu violated plaintiff's due process rights by forcibly injecting him with medication on January 11, 2019.  The record before this court reflects that, after assessing plaintiff's demeanor and conduct that morning, Dr. Liu reasonably concluded in her professional opinion that plaintiff posed a danger to himself and others in the context of 14 N.Y.C.R.R. § 527.8(c)(1).  The record also reflects Dr. Liu's judgment that the medication administered to plaintiff that morning

was appropriate to address the escalating situation.  There is no indication that Dr. Liu's

decision to medicate plaintiff over his objection was such a deviation from accepted

practice as to impart liability under § 1983.

Faced with the defendants' proffer, plaintiff has failed to meet his burden and

produce any evidence that his conduct did not pose a risk danger to himself and others

so as to justify the involuntary administration of medication to him on January 11,

2019.  Plaintiff "may not rely on [the] conclusory allegations or unsubstantiated

speculation" alleged in his pleadings or set forth in his deposition to demonstrate a

genuine issue of material fact in this regard.  *Jeffreys v. City of New York*, 426 F.3d

549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428

(2d Cir. 2001) (internal quotation marks omitted)); *see also  D'Amico v. City of N.Y.,*

132 F.3d 145, 149 (2d Cir. 1998) (To defeat summary judgment, a nonmoving party

"must offer some hard evidence showing that its version of the events is not wholly

fanciful.").

Accordingly, the pending motion for summary judgment should be granted and

the complaint dismissed in its entirety against each moving defendant.[11]  Because this

court finds no basis to impart liability on Dr. Liu for ordering that plaintiff be

medicated over his objection, liability may not attach to Nurse Laperla for following

Dr. Liu's orders and injecting plaintiff with the medication.  *See Douglas v. Stanwick*,

93 F. Supp. 2d 320, 326 (W.D.N.Y. 2000) (declining to impart liability on defendant

---

[11]Because I am recommending that defendants' motion for summary judgment be granted
on the bases addressed herein, this court will not address defendants' claim of qualified
immunity.  (Def.'s Br. at 12).

nurse in the context of a medical deliberate indifference claim, where she acted in compliance with supervising doctor's "objectively reasonable" instructions).

Moreover, even assuming a question of fact existed as to whether plaintiff's constitutional rights were violated, defendants Dr. Beale and Dr. Sullivan were not present at CNYPC on January 11, 2019, and had no personal involvement with or prior knowledge of the decision to medicate plaintiff over his objection.  (Beale Dec. at ¶ 13, Ex. E; Declaration of Ann Marie Sullivan at ¶¶ 5, 7-9 (Dkt. No. 31-5)).  Thus, plaintiff has not established any "deliberate, intentional act on the part of [these] defendant[s]" in connection with any alleged constitutional violation, and summary judgment for these defendants is alternatively proper on such grounds.  *See Tangretti*, 983 F.3d at 618.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 31) be **GRANTED**, and plaintiff's complaint dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 3, 2021

_____
Andrew T. Baxter
U.S. Magistrate Judge